**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAMANTHA RYALS,** | * | |
| **Plaintiff** | * | |
| **V.** | * | **Civil Action No. 23-CV-1270(TSC)** |
| **UNITED STATES OF AMERICA, et al.** | * | |
| **Defendants** | * | |

\*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
VIOLETA GROUNDS MANAGEMENT CO., INC.'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**I.    INTRODUCTION**…………………………………………………...………...2

**II.    STATEMENT OF UNDISPUTED FACTS**……………………………….…...3

**III.    STANDARD OF REVIEW**…………………………………………….......6

**IV.    ARGUMENT**……………………………………………….………......7

   A.  Violeta owed no legal duty to the Plaintiff…………………………….........7

   B.  There is no evidence that Violeta breached any duty to the Plaintiff…………..…11

   C.  Violeta is entitled to summary judgment as to Count IV of the Amended
       Complaint as there is no cause of action in the District of Columbia
       for vicarious liability, and Violeta is not vicariously liable to the
       Plaintiff for any issues arising out of Davey's mowing duties, as
       the National Park Service accepted the assignment of mowing duties
       at Lincoln Park to Davey …………………………………………….12

**V.    Plaintiff's Lawncare Expert Richard Arlington Failed to Articulate Any Applicable
       Standard of Care**…………………………………………………………15

**VI.    CONCLUSION**………………………………………………………...20

Defendant Violeta Grounds Management Co., Inc., (hereinafter "Violeta"), by and through its attorneys, William Carlos Parler, Jr. and The Law Offices of William C. Parler, Jr., L.L.C., respectfully submits this Memorandum of Grounds and Authorities in Support of its Motion for Summary Judgment.

## I.    INTRODUCTION

The Plaintiff tripped and fell while walking her dog in the northwest section of Lincoln Park the afternoon of June 10, 2021. Lincoln Park is part of the National Park Service, and is located in Capitol Hill on East Capitol and 11th Streets. Statutes of Lincoln and Mary McLeod Bethune are in a central area of the park. The park is open to the public from 5:00a.m. to midnight daily and is frequently used by Capitol Hill residents to walk their dogs. The Park also hosts special events, such as concerts, and festivals. The Park Service and Violeta were not advised of the Plaintiff's accident until over a year later, in the fall of 2022.

Violeta and Davey Commercial Grounds Management (hereinafter "Davey") submitted a joint bid to perform landscape maintenance services for the National Park Service for the National Capital Parks, which included Lincoln Park. The Park Service accepted the bid, and on June 16, 2020 that Davey, which had previously had the contract for the Park Service landscape maintenance, would continue to handle the lawn mowing operations, with Violeta handling all duties related to mulching, removing weeds and maintaining the flower and tree beds in the Capitol Parks, including Lincoln Park. From June of 2020 through the June 21, 2021 trip and fall of the Plaintiff, Violeta work crews performed mulching, weeding, and maintenance of the flower and tree beds in Lincoln Park. The Landscape Maintenance Agreement with the Park Service did not require Violeta to inspect Lincoln Park, and thus, did not impose any duty on the part of Violeta to the Plaintiff. There is no evidence in this case that Violeta owed any duty of care to the Plaintiff, or that it breached any duty owed to the Plaintiff.

## II.      STATEMENT OF UNDISPUTED FACTS

In 2020, Violeta and Davey submitted a joint bid to perform landscape maintenance services for the Capitol Parks of the National Park Service.  Violeta/Davey Joint Bid, attached as "Exhibit 1".  The joint bid was successful, and Violeta was awarded the landscape maintenance contract for the Capital Parks, including Lincoln Park.  Violeta/Davey-National Park Service (hereinafter "NPS") Contract, attached as "Exhibit 2".  The NPS-Violeta/Davey contract did not contain any language requiring Violeta or Davey to inspect Lincoln Park to inspect the park to report any conditions unrelated to their landscaping duties under the contract.  The Park Service "Performance Work Statement for Grounds Maintenance Services" required only that the Park Service "COR" (Contract Administrator) be advised of any "circumstances" that affect the Landscape Maintenance Program, including any safety, health or fire hazards, attached as "Exhibit 3".

In June of 2020, Lewis Harris of the NPS was advised that Davey would continue to handle the mowing operations at the NPS Capitol Parks, including Lincoln Park,  with Violeta handling the mulching and bed maintenance for flowers and trees.  06/16/2020 e-mail from Brendan Lowe of Davey to NPS Contract Representative Lewis Harris, attached as "Exhibit 4".  Thus, from June of 2020 through the Plaintiff's June 10, 2021 trip and fall accident, Violeta performed mulch and bed maintenance services at Lincoln Park.  The areas to be mulched, and beds to be maintained were all in the central areas of the park near the Lincoln Emancipation and Mary McLeod Bethune statues in the central area of the park.  See satellite photo of Lincoln Park, attached as "Exhibit 5".  Violeta employees had no reason to be in the northwest section of Lincoln Park, where the Plaintiff claims that her accident occurred.  Depo Testimony of S. Ryals, attached as "Exhibit 6", at page 130.  Plaintiff walked her dog three times a day in Lincoln Park. *Id* at 23.  The day of the accident, the Plaintiff left her job at the U.S. Capitol and walked home in her dress attire to take her dog for a walk in Lincoln Park around 3:00 to

3:15p.m. in the afternoon.  *Id* at pages 34-35.  Plaintiff stated that she was permitting her dog to wander off of the sidewalk to areas he preferred to urinate.  As she was following the dog, she testified that her right foot stepped on the "edge of a hole", and that she fell forward on top of her left foot.  She is not sure how she ended up falling on her left foot and thinks she may have lost consciousness before a gentleman from Australia stopped to render assistance.  *Id* at pages 41 to 45.  **The Plaintiff does not know how long the hole she claims to have stepped in with her right foot had existed prior to her accident and does not know if it was created by an animal.  *Id* at 61.**  The Plaintiff did not notify anyone about the accident.  At the request of her attorneys, she and boyfriend (now husband) Kelly Jordan went to the area in October of 2022 to identify and photograph it. Id at pages 61, ln. 9 to 64, ln. 17.  The Plaintiff claims that she fractured her left ankle as a result of the accident. *Id* at page 70 to 71.  Plaintiff was unable to state after the accident where her trip and fall had occurred, when she was calling a friend to pick her up from the park immediately after the accident.   *Id* at pages 55, ln.8 to 56, ln. 2.   However, three days after the accident, Plaintiff testified that she told her boyfriend, now husband, Kelly Jordan where the accident occurred, and he was able to go alone and to locate the area where her trip and fall occurred. Jordan measured distances from the bench along the sidewalk, and from the sidewalk to the approximate trip and fall area to locate the area where she believes her trip and fall occurred, and photographed his measurements so that they could locate the area again if necessary. Jordan also used her apple watch path record of her walk to identify areas of the park where she and the dog had walked leading up to her trip and fall.  *Id* at 142 to 144; and Jordan photographs with measurements from the bench and sidewalk to record where he thought the trip and fall occurred, attached as "Exhibit 7".  It is evident that the area of the alleged incident was so inconspicuous that the Plaintiff's boyfriend felt he needed to record his coordinates from a nearby bench and the sidewalk to record the spot where he concluded, without the Plaintiff being physically present, that the trip had occurred.

Violeta was not aware of the Plaintiff's accident until its owner, Sheila Wright, received a Rule 45 subpoena from Plaintiff's counsel dated November 29, 2023, attached as "Exhibit 8". After Plaintiff's counsel advised Violeta of the area in the northwest section of Lincoln Park where the accident allegedly occurred, Nick Miller and Sheila Wright of Violeta photographed and videoed the area where the alleged accident occurred. Photographs and video of the area where the accident occurred, attached as "Exhibit 9". Violeta was unaware of any issues with the northwest location of the Plaintiff's alleged trip and fall in Lincoln Park prior to the claimed accident and have not received notice of any one of the hundreds of thousands of annual visitors to the park tripping and sustaining any injuries from the date of its contract with the NPS in 2020 to the present. Violeta's answers to interrogatories of the Plaintiff, answer no. 11, attached as "Exhibit 10". Violeta continues to provide landscape maintenance services for the NPS, including Lincoln Park. There is no evidence in this case that anyone at Violeta had actual or constructive notice of any issue where the Plaintiff claims to have tripped before the alleged accident. Violeta's answers to interrogatories 11 and 12, attached as "Exhibit 10". From June of 2020 through the date of the alleged June of 2021 accident, Violeta was responsible for mulching, removing weeds and flower or tree bed maintenance at Lincoln Park. Exhibits 2 and 4, NPS-Violeta/Davey Contract, and June 16, 2020 e-mail from Brendan Lowe of Davey's to NPS Contract Administrator Lewis Harris, and Depo Testimony of Violeta 30(b)(6) designee Sheila Wright, at pages 46, ln. 15 to 52, ln. 19; and page 60, ln. 25 to page 61, ln. 23, attached as "Exhibit 11". NPS Contract Administrator Lewis Harris accepted the assignment of the mowing responsibilities to Davey at the outset of the contract in 2020. *Id* at page 68, ln. 4 to page 69, ln. 1. Thus, no Violeta employees had any reason to be in the northwest section of Lincoln Park in the area where the Plaintiff claims her accident occurred, as that area was not mulched and was not part of a flower or tree bed, as those items were located in the central area of the park, near the Emancipation Statue. *Id* at page 60, ln. 25 to page 61, ln. 23. The NPS acceptance of the

assignment of mowing duties to NPS was understandable, as Davey's was the prior landscape maintenance contractor for the Capitol Parks beginning in the late 1990's. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at pages 21, ln. 19 to page 22, ln. 16.   From June of 2020 through September of 2023, Davey's invoices for mowing work at Lincoln Park were submitted to and paid by the NPS.  Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at page 48; and copies of Davey's mowing invoices submitted to and paid by the Park Service are attached hereto as "Exhibit 13".  Davey had its own schedule for performing mowing services at Lincoln Park, performing mowing services on a weekly basis.  Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at pages 28, ln. 21 to page 29, Ln. 7.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate where a party demonstrates that based on the materials in the factual record, including documents, depositions, affidavits or declarations, admissions, and interrogatory answers, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Summary judgment is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Importantly, "a complete failure of proof concerning an essential element of the [plaintiff's] case renders all other facts immaterial" and necessitates a grant of summary judgment in favor of the defendant. *Maydak v. United States*, 630 F.3d 166, 181 (D.C. Cir. 2010) (quoting *Celotex*, 477

U.S. at 322-23). Although the court should draw all inferences from the supporting records submitted by the nonmoving party, "the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment." *Frazza v. United States*, 529 F. Supp. 2d 61, 68 (D.D.C. 2008) (quoting *Anderson*, 477 U.S. at 247-48). A material fact is one "capable of affecting the substantive outcome of the litigation," while a genuine issue requires that the issue be "supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Id*.

The "very mission of the summary judgment procedure is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Blackhawk Heating & Plumbing Co. v. Driver*, 433 F.2d 1137, 1145 (D.C. Cir. 1970).

## IV.    ARGUMENT

### A.    Violeta Owed No Legal Duty to the Plaintiff

There is no evidence in this case that Violeta had any legal duty to the Plaintiff under the terms of its contract with the NPS. Violeta's work at Lincoln Park was limited to mulching, caring for the flower and tree beds, and removing weeds from the areas mulched and the flower and tree beds in central areas of the park near the Lincoln statue. It is undisputed that the Plaintiff's alleged accident did not occur in an area that was mulched, or a flower or tree bed. There is no evidence in this case that anyone at Violeta had actual or constructive notice of any issue or problem in the northwest area of Lincoln Park where the Plaintiff claims her accident occurred, prior to June 10, 2021, as Violeta had no reason to be in that area prior to the accident. Thus, Violeta is entitled to summary judgment as a matter of law.

Under the District of Columbia's tort law, a plaintiff alleging negligence must prove that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008). When the claim of negligence is "predicated upon the existence of a

dangerous condition," the plaintiff must prove that the defendant had actual or constructive notice of the condition. *Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015) (internal quotation marks omitted) (quoting *Anderson v. Woodward & Lothrop*, 244 A.2d 918, 918 (D.C. 1968) (per curiam)). … "the plaintiff must also show that the defendant either knew or should have known—i.e., had constructive notice—of the hazardous condition" in order to establish the requisite duty of care. *Jones v. NYLife Real Est. Holdings, LLC*, 252 A.3d 490, 495 (D.C. 2021); *see also Wise v. United States*, 145 F. Supp. 3d 53, 65 (D.D.C. 2015) ("The notice requirement exists in tandem with the general rule that 'the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care . . . is reasonable care under all of the circumstances.'" (quoting *Croce v. Hall*, 657 A.2d 307, 310 (D.C. 1995))). *Leach v. One Parking 555, LLC*, 319 A.3d 415, 419 (D.C. 2024)

To establish that the defendant owed this duty, a plaintiff alleging that she was harmed by a dangerous condition on the premises must show that the defendant "(1) has actual or constructive notice of the condition and (2) has the right to exercise control over that condition." *Campbell v. Noble*, 962 A.2d 264, 266 (D.C. 2008) (citation omitted). The plaintiff also bears the burden "to prove that the defendant was negligent 'either in creating a dangerous condition or in allowing one to continue without correction and that this negligence was the proximate cause of the [plaintiff's] injuries.'" *Thomas v. Grand Hyatt Hotel*, 749 F. Supp. 313, 314 (D.D.C. 1990), *aff'd*, 957 F.2d 912, 294 U.S. App. D.C. 163 (D.C. Cir. 1992) (quoting *Paylor v. Safeway Stores, Inc.*, 225 A.2d 312, 314 (D.C. 1967)).

"[T]he applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his premises is reasonable care under all of the circumstances." *Sandoe*, 559 A.2d at 738 (citations omitted). To establish that a defendant had a duty to exercise reasonable care to cure a dangerous condition within a given area, the plaintiff must show that the defendant "(1)  has actual or constructive notice of the

condition and (2) has the right to exercise control over that condition." *Campbell*, 962 A.2d at 266 (citation omitted); *see also Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 784, 328 U.S. App. D.C. 367 (D.C. Cir. 1998) ("The plaintiff in a premises liability action must prove the defendant owned or controlled the property.").  *Givens-Nyarko v. Crothall Healthcare, Inc.*, No. 20-cv-2728-RMM, 2023 U.S. Dist. LEXIS 176289, at *23-24 (D.D.C. Sep. 29, 2023)

   In a case alleging negligence in the maintenance of a building, grounds, or other location, to establish the requisite duty, the plaintiff must also show that the defendant either knew or should have known — i.e., had constructive notice — of the hazardous condition creating a foreseeable risk of injury. *See Marinopoliski v. Irish*, 445 A.2d 339, 341 (D.C. 1982) ("[T]he cause of the injury must be foreseeable . . . and the cause must have been present in the area where the injury occurred for a sufficient length of time that the property owner should have known about it."). To prove constructive notice, "a plaintiff must present evidence  that a dangerous condition existed for such a duration of time that had reasonable care been exercised the hazard would have been discovered." *Wilson v. Washington Metro. Area Transit Auth.*, 912 A.2d 1186, 1190 (D.C. 2006). "The relevant circumstances that a court may consider include such things as the   length of time that the defective condition existed" and "whether the condition was obvious or latent." *Briscoe v. District of Columbia*, 62 A.3d 1275, 1279 (D.C. 2013). "[T]he fact that a defect exists is not sufficient in and of itself to provide constructive notice of that defect to the entity that maintains the property." *Washington Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 378 (D.C. 2009).  *Jones v. NYLife Real Estate Holdings, LLC*, 252 A.3d 490, 495-96 (D.C. 2021)

   In *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097-98 (D.C. 1994), the court declined to hold a plumber liable who had repaired a leaking pipe but failed to tell the owner that the pipe had leaked water into an alley on the premises that turned to ice, resulting in the slip and

fall injury of the Plaintiff. The court concluded that the plumber had no duty to the person injured on ice created as a result of water from the leaking pipe. The court stated:

> A person is liable to another in negligence only if it can be shown that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff. *See Powell v. District of Columbia,* 634 A.2d 403, 406 (D.C. 1993); *Levy v. Schnabel Found. Co.,* 584 A.2d 1251, 1255 (D.C. 1991). Consequently, a person is "liable to another only when he owes him some duty of care." *Lipnick v. United States,* 717 F. Supp. 902, 904 (D.D.C. 1989); *see Williams v. Baker,* 572 A.2d 1062, 1064 (D.C. 1990) (en banc); *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99, 99-100 (N.Y. 1928). In a case of this nature, it is critical to determine whether a duty was owed by the alleged tortfeasor to the person claiming injury. Woven into this overall consideration is also the question of reasonably foreseeable risk to be perceived by the actor at the time of the incident. Stated another way, we must ask "whether the injury to that individual [to whom a duty was owed] was reasonably foreseeable to the defendant." *Powell v. District of Columbia,* 602 A.2d 1123, 1133 (D.C. 1992) (citations omitted). "It is first necessary to ascertain the scope of the defendant's undertaking, for the scope of the defendant's undertaking determines the scope of its duty." *See Canipe v. Nat'l Loss Control Serv. Corp.,* 736 F.2d 1055, 1061 (5th Cir. 1984). [**9] This limitation on the foreseeability of risk imposed upon an actor's scope of duty has indeed been recognized by textwriters as the predominant analytical approach. *See* FOWLER V. HARPER ET AL., THE LAW OF TORTS § 18.2, at 655 (2d ed. 1986); *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 358 (5th ed. 1984).
>
> Notwithstanding Haynesworth's claim that the plumber's inaction increased the risk of harm to him, we note that it was the property manager's duty, not the plumber's, to maintain the common areas of the building. *See Graham v. M & J Corp.,* 424 A.2d 103, 105 (D.C. 1980) ("[A] landlord has a duty to use reasonable care to keep safe those common areas of the building retained under his control"); *Beck v. Shannon and Luchs Co.,* 174 A.2d 199, 200 (D.C. 1961); *Pessagno v. Euclid Inv. Co.,* 72 App. D.C. 141, 143, 112 F.2d 577, 579 (1940). Smith's vice-president admitted during his testimony that Smith was responsible for removing any snow or ice on the property. With this responsibility, Smith should have had some mechanism in place which would have provided notice of the situation in the alley rather than attempting to delegate its duty to the plumber. By not having an agent on the premises, Smith, in effect, attempted to shift its duty to safeguard persons from perils in the common areas of the building onto the plumber.

> Absent some express understanding between Smith and Stevens, we are not persuaded by the argument that the plumber entered onto the property as a plumber but left as a maintenance man for Smith.
>
> While we venture  no opinion on what a different set of facts may warrant, under these circumstances, the plumber had no duty to warn Smith about the dangerous condition in the alley and therefore, Stevens could not be held accountable for Haynesworth's injuries. Because Haynesworth has relied heavily upon Restatement principles, we expressly affirm the trial judge's ruling that appellant failed to satisfy any subsection of the Restatement earlier quoted. Accordingly, the motion for a judgment notwithstanding the verdict was properly denied and the judgment of the trial court is *Affirmed.*
>
> *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1099 (D.C. 1994)

It is evident in this case that Violeta owed no legal duty to the Plaintiff, as there is no evidence in this case that Violeta had notice prior to Plaintiff's injury that there was any condition in the northwest portion of Lincoln Park likely to cause injury to any park visitor, including the Plaintiff.  Prior to Plaintiff's accident, Violeta had no reason to be in the northwest section of Lincoln Park where the Plaintiff claims that her trip and fall accident occurred.

**B.  There is No Evidence that Violeta Breached Any Duty Owed to the Plaintiff**

Violeta's contract with the NPS went into effect in June of 2020.  From June of 2020 through the June 10, 2021 date of the Plaintiff's accident, Violeta performed mulching and maintenance of flower and tree beds not in the vicinity of where the Plaintiff's accident occurred in the northwest section of Lincoln Park.  There is no evidence in this case that any actions on the part of Violeta's employees at Lincoln Park contributed in any way to the Plaintiff's trip and fall accident.  The Plaintiff in this case testified that she had no idea how long the hole that she stepped on with the edge of her right foot causing her to trip and fracture her left ankle had existed prior to the incident. Exhibit 6, at page 61.  Plaintiff also did not know if the alleged hole had been created by an animal.  Lincoln Park is frequented by thousands of Capitol Hill residents

every day walking their dogs.  The condition that allegedly caused the Plaintiff to trip could have been created seconds or minutes before the Plaintiff's accident.  To establish that a defendant had a duty to exercise reasonable care to cure a dangerous condition within a given area, the plaintiff must show that the defendant "(1) has actual or constructive notice of the condition and (2) has the right to exercise control over that condition." *Campbell*, 962 A.2d at 266 (citation omitted); *see also Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 784, 328 U.S. App. D.C. 367 (D.C. Cir. 1998) ("The plaintiff in a premises liability action must prove the defendant owned or controlled the property.").  *Givens-Nyarko v. Crothall Healthcare, Inc.*, No. 20-cv-2728-RMM, 2023 U.S. Dist. LEXIS 176289, at *23-24 (D.D.C. Sep. 29, 2023)

**C. Violeta is entitled to summary judgment as to Count IV of the Amended Complaint as there is no cause of action in the District of Columbia for vicarious liability, and Violeta is not Vicariously liable to the Plaintiff for any issues arising out of Davey's mowing duties, as the National Park Service accepted the assignment of mowing duties at Lincoln Park to Davey.**

At the outset of the NPS contract with Violeta, the NPS Contract Administrator Lewis Harris accepted the assignment of mowing duties at Lincoln Park to Davey, which is understandable, since Davey's designee testified that it had performed mowing work for the NPS at Lincoln Park beginning in the late 1990's, and that NPS paid all of the Davey invoices submitted for mowing work at Lincoln Park from June of 2020 through 2023.  From June of 2020 through the date of the alleged June of 2021 accident, Violeta was responsible for mulching, and flower or tree bed maintenance at Lincoln Park, which included removing any weeds from the those areas.  Exhibits 2 and 4, NPS-Violeta/Davey Contract, and June 16, 2020 e-mail from Brendan Lowe of Davey's to NPS Contract Administrator Lewis Harris, and Depo Testimony of Violeta 30(b)(6) designee Sheila Wright, at pages 46, ln. 15 to 52, ln. 19; and page 60, ln. 25 to page 61, ln. 23,  attached as "Exhibit 11".  NPS Contract Administrator Lewis Harris accepted the assignment of the mowing responsibilities to Davey at the outset of the contract in 2020.  *Id* at page 68, ln. 4 to page 69, ln. 1.  Thus, no Violeta employees had any

reason to be in the northwest section of Lincoln Park in the area where the Plaintiff claims her accident occurred, as that area was not mulched and was not part of a flower or tree bed, as those were both located in the central area of the park, near the Emancipation Statue. *Id* at page 60, ln. 25 to page 61, ln. 23. The NPS acceptance of the assignment of mowing duties to NPS was understandable, as Davey's was the prior landscape maintenance contractor for the Capitol Parks beginning in the late 1990's. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at pages 21, ln. 19 to page 22, ln. 16. From June of 2020 through September of 2023, Davey's invoices for mowing work at Lincoln Park were submitted to, and paid by the NPS. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at page 48; and copies of Davey's mowing invoices submitted to and paid by the Park Service are attached hereto as "Exhibit 13". Davey had its own schedule for performing mowing services at Lincoln Park, performing mowing services on a weekly basis. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at pages 28, ln. 21 to page 29, Ln. 7.

In *Trainor Glass Co. v. James G. Davis Constr. Corp.*, Civil Action No. 07-1497 (RCL), 2008 U.S. Dist. LEXIS 141854, at *7 (D.D.C. Mar. 19, 2008), the court discussed District of Columbia law on contract assignments, stating:

> When parties form a valid contract, "the written language embodying the terms of [the] agreement governs the rights and liabilities of the parties." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005). As a general rule, parties may freely assign these contract rights and liabilities, but courts typically honor unambiguous contractual language prohibiting assignments. *Flack v. Laster*, 417 A.2d 393, 399 (D.C. 1980).**8 A valid assignment requires only that the assignor manifest a present intention to transfer his rights and/or duties to the assignee, who must usually manifest his assent to the assignment. Restatement (Second) of Contracts §§ 324, 327 (1981). The assignee then "stands in the shoes of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract." *Manganaro Corp.*

*v. Jefferson at Penn Quarter, L.P.*, No. 04-2133, 2005 U.S. Dist. LEXIS 35714, at *8-9 (D.D.C. Aug. 9, 2005) (Kessler, J.).

*Trainor Glass Co. v. James G. Davis Constr. Corp.*, Civil Action No. 07-1497 (RCL), 2008 U.S. Dist. LEXIS 141854, at *7 (D.D.C. Mar. 19, 2008)

The District of Columbia does not recognize a cause of action for "vicarious liability". Plaintiff's reliance on a vicarious liability in court IV of the amended complaint against Violeta is misplaced, as there is no evidence in this case that there was ever an employer-employee, master-servant or agent-principal relationship between Violeta and Davey. In this case, the mowing duties at Lincoln Park were assigned to Davey, which sent mowing crews out on their own schedule, and submitted their own invoices to the NPS, which were always promptly paid. NPS consented to the assignment, as Davey had performed mowing services previously at Lincoln Park, beginning in the late '90s. The NPS acceptance of the assignment of mowing duties to NPS was understandable, as Davey's was the prior landscape maintenance contractor for the Capitol Parks beginning in the late 1990's. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at pages 21, ln. 19 to page 22, ln. 16. From June of 2020 through September of 2023, Davey's invoices for mowing work at Lincoln Park were submitted to, and paid by the NPS. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at page 48; and copies of Davey's mowing invoices submitted to and paid by the Park Service are attached hereto as "Exhibit 13". Davey had its own schedule for performing mowing services at Lincoln Park, performing mowing services on a weekly basis. Depo Testimony of Davey 30(b)(6) designee Josh Piquette, attached as "Exhibit 12", at pages 28, ln. 21 to page 29, Ln. 7.

In *Givens-Nyarko v. Crothall Healthcare, Inc.*, No. 20-cv-2728-RMM, 2023 U.S. Dist. LEXIS 176289, at *7 (D.D.C. Sep. 29, 2023), the court addressed District of Columbia law on vicarious liability, stating:

> "[V]icarious liability is not an independent cause of action, but rather is a legal concept used to transfer liability from an agent to a principal at trial." *Crawford v. Signet Bank*, 179 F.3d 926, 929, 336 U.S. App. D.C. 316 (D.C. Cir. 1999) (quoting *Young v. 1st Am. Fin. Servs.*, 977 F. Supp. 38, 41 (D.D.C. 1997)). "In order to succeed under the respondeat superior theory of liability," a plaintiff "must show that a master-servant relationship existed" between the employee alleged to have acted negligently and the defendant, "and that the incident at issue occurred while the [employee] was acting within the scope of [her] employment." *Giles v. Shell Oil Corp.*, 487 A.2d 610, 611 (D.C. 1985) (citation omitted).
>
> *Givens-Nyarko v. Crothall Healthcare, Inc.*, No. 20-cv-2728-RMM, 2023 U.S. Dist. LEXIS 176289, at *7 (D.D.C. Sep. 29, 2023)

Based on the facts of this case, the NPS accepted the assignment of mowing duties under the contract to Davey and paid their invoices for mowing performed at Lincoln Park. There is no evidence of any master-servant, employer-employee or agent-principal relationship between Violeta and Davey. As a result, there are no legal grounds in this case to impose vicarious liability on Violeta for Davey's performance of mowing duties at Lincoln Park, assuming arguendo, that there was any basis in this case for doing so. In this case, the spot where the Plaintiff tripped was so inconspicuous that the Plaintiff's boyfriend had to photograph his measurements to the spot from a nearby bench and sidewalk so that he could locate it on future visits, and photographs of the location indicate that there is nothing there that would either draw the attention of mowing contractors, or interrupt in any fashion the normal, routine mowing of the area. It is evident in this case that Davey lacked actual or constructive notice of any condition that may have contributed to the Plaintiff's alleged trip and fall on June 10, 2021.

## V.    Plaintiff's Lawncare Expert Richard Arlington Failed to Articulate Any Applicable Standard of Care

Plaintiff designated a lawncare operator from Erie, Pennsylvania as an "expert" in this case named Richard Arlington (hereinafter "Arlington"). Arlington testified he derives 100% of

his income from testifying in forensic cases.  Depo Test. Arlington, attached as "Exhibit 14", at

pages 68, ln. 22 to page 69. Arlington testified that the principles stated in "ASTM 1637-21",

ANSI 1264, and OSHA applied to this case.  With regard to ASTM 1637-21, Arlington is not

aware of any District of Columbia Courts adopting ASTM 1637-21 as an applicable standard of

care.  Arlington stated that he was aware that ASTM 1637-21 does not apply to any "natural

walks" or "unimproved paths", and acknowledged that the Plaintiffs' trip and fall accident

occurred on a natural walk and unimproved path.  Depo Test. Arlington, Exhibit 14, at page 60,

lns. 6-22. ASTM 1637-21 states:

### ASTM International - ASTM F1637-21
**Standard Practice for Safe Walking Surfaces**

Details
History
Related Products

| | |
|---|---|
| **Organization:** | ASTM International |
| **Publication Date:** | 1 March 2021 |
| **Status:** | active |
| **Page Count:** | 3 |
| **ICS Code (Protection of and in buildings in general):** | 91.120.01 |

**significance And Use:**
4.1 This practice addresses elements along and in walkways including floors and walkway surfaces, sidewalks, short flight stairs, gratings, wheel stops, and speed bumps. **Swimming pools, bath tubs, showers, natural walks, and unimproved paths are beyond the scope of this practice. (bold added for emphasis).**

**ASTM F1637-21**

Arlington was not aware that with regard to ANSI 1264 that ANSI published a statement

expressly stating that ANSI 1264 is a standard for reducing the risk of slip missteps in the

workplace. Arlington is aware that Ryal's trip and fall occurred at Lincoln Park, and not her

place of work.  Depo Testimony Arlington, Exhibit 14, at page 61, ln. 23 to page 61, ln. 12.

ANSI 1264 states:

ANSI/ASSP A1264.2-2022 Reducing Slip Missteps on Walking-

Working Surfaces

**ANSI/ASSP A1264.2-2022 Reducing Slip Missteps on Walking-
Working Surfaces**
The purpose of this standard is to establish minimum provisions
for reasonably safe underfoot surfaces for persons pursuing
foreseeable activities.

**This standard sets forth provisions for reducing the risk of slip
missteps in workplace situations**. These incidents may occur as a
result of surface characteristics or conditions. This standard is
intended for use by safety, design, and facility professionals, and
related practitioners, who seek guidance on reducing risk for same-
level missteps and misstep-related falls, and prioritizing solutions
for prevention.(bold added for emphasis).

Arlington's third proposed standard, OSHA 29 CFR 1926 is also a workplace standard

designed to promote employee safety in the workplace.  Indeed, the OSHA website makes clear

OSHA's purpose, which is to promote safe workplaces for employees, stating:

**OSHA's Mission**

OSHA's mission is to assure America's workers have safe and
healthful working conditions free from unlawful retaliation. OSHA
carries out its mission by setting and enforcing standards;
enforcing anti-retaliation provisions of the OSH Act and other
federal whistleblower laws; providing and supporting training,
outreach, education, and assistance; and working collaboratively
with our state OSHA programs as well as ensuring that they are at
least as effective as federal OSHA, furthering a national system of
worker safety and health protections.

Arlington did state that he was unaware of any evidence that any of the Defendants was

aware of the slight hole where the Plaintiff tripped before her June 10, 2021 accident.  *Id* at page

31, ln. 17 to 21. Arlington does not know what caused the hole or how long it had existed before

June 10, 2021.  Id at page 34, ln. 20 to 24; and page 57.    According to Arlington, even a one inch hole can be a tripping hazard.  *Id* at page 36, ln. 2 to 9.  Arlington never went to Lincoln Park, and never personally observed where the Plaintiff's trip and fall accident occurred.  *Id* at page 36, lns. 22 to 24.  Arlington agreed that the hole as depicted in Plaintiff's photographs taken on 06/13/21 and 06/20/21 was not observable, even at a close distance.  *Id* at page 93, ln. 12 to page 94, ln. 20.  Arlington agreed that the Plaintiff had been walking her dog in Lincoln Park three times a day for years prior to her accident, and as a result, Arlington would expect Ryals to be familiar with the conditions of Lincoln Park.  *Id* at page 61, ln 13 to 23.  Arlington stated that from June of 2020 through the June 10, 2021 accident, Violeta was doing mulching and trimming at Lincoln Park, but he had no idea where Violeta did either mulching or trimming at Lincoln Park for the one year prior to the accident.  *Id* at page 65, lns. 17 to 24. Arlington is not aware of anyone else claiming to have tripped and fallen at Lincoln Park from 2015 to the present, even though hundreds of thousands visit Lincoln Park every year.  *Id* at page 67, lns. 2 to 12.

In the District of Columbia, courts have consistently required expert testimony to establish a national standard of care in negligence and medical malpractice cases. The expert must provide a clear and articulated basis for their knowledge of the standard of care, linking their opinion to the applicable national standard.  Arlington has failed to articulate any applicable standard of care, lawncare or otherwise, applicable to Defendants' work at Lincoln Park prior to the alleged accident. Testimony based solely on personal opinion, anecdotal observations, or generalized references to standards is insufficient to meet this requirement.

- In *Hill v. Medlantic Health Care Group*, 933 A.2d 314, the court excluded the expert's testimony because the expert failed to establish the basis for his knowledge of the national standard of care for the treatment of osteomyelitis. The expert's testimony was deemed insufficient as it relied on personal opinion without a proper foundation or linkage to a national standard. *Hill v. Medlantic Health Care Group*, 933 A.2d 314.

- In *Nwaneri v. Sandidge*, 931 A.2d 466, the court found that the patient's expert failed to provide a sufficient foundational basis for his knowledge of the national standard of care. The expert's general expertise in vascular surgery was insufficient without specific testimony or evidence establishing the basis for his knowledge of the national standard. The court remanded the case due to the trial court's error in overruling foundational objections. *Nwaneri v. Sandidge*, 931 A.2d 466.

- In *Travers v. District of Columbia*, 672 A.2d 566, the court held that the expert's testimony was insufficient to establish a national standard of care. The expert relied on personal opinion and conversations with local colleagues, failing to provide a factual basis that reflected a national standard. The court also found a lack of evidence linking the alleged negligence to the injury. *Travers v. District of Columbia*, 672 A.2d 566.

- In *Messina v. District of Columbia*, 663 A.2d 535, the court affirmed the exclusion of the expert's testimony because the expert failed to provide a basis, other than personal opinion, for his conclusion regarding the necessary cushioning standard for playground equipment. The testimony did not establish a national standard of care or show that the municipality was aware of such a standard. *Messina v. District of Columbia*, 663 A.2d 535.

- In *Pannell v. District of Columbia*, 829 A.2d 474, the court granted summary judgment after the plaintiff's expert failed to offer any support for his conclusion that the District violated a national standard of care. The expert's testimony was excluded as it did not articulate or reference a standard of care by which the defendant's actions could be measured Pannell v. District of Columbia, 829 A.2d 474.

- In *District of Columbia v. Arnold & Porter*, 756 A.2d 427, the court remanded the case, holding that the expert testimony was inadequate to establish that the District's unwritten policies were tied to a national standard of care. The court emphasized the necessity of expert testimony to establish a national standard unless the subject matter is within common knowledge. *District of Columbia v. Arnold & Porter*, 756 A.2d 427.

- In *Rhodes v. United States*, the court found that the expert testimony established the national standard of care, linking the doctor's failure to consider breast cancer in her differential diagnosis to a breach of that standard. The testimony demonstrated the required linkage between the expert's opinion and the national standard. *Rhodes v. United States*, 967 F. Supp. 2d 246.

- In *Briggs v. Wash. Metro. Area Transit Auth.*, the court affirmed the dismissal of the case, finding that the expert failed to establish an applicable standard of care. The expert's generalized references to standards and personal opinion were insufficient to meet the legal requirement for expert testimony in negligence cases. *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839.

- In *Beckwith v. Interstate Mgmt. Co., LLC*, the court granted summary judgment, holding that the plaintiff's expert failed to establish a standard of care. The expert's vague references to "best practices" and "minimum standards" did not provide substantive content or a specific standard of care. *Beckwith v. Interstate Mgmt. Co., LLC*, 82 F. Supp. 3d 255.

- In *Frazza v. United States*, the court found that the expert's reliance on personal experience and anecdotal observations failed to establish a national standard of care. The expert's opinion regarding the use of mats and cones was insufficient to demonstrate a prevailing practice or national standard. *Frazza v. United States, 529 F. Supp.* 2d 61.

Based on this record, Arlington's report and deposition testimony, it is evident that Arlington has failed to articulate any well-founded, applicable standards of care applicable to any of the Defendants in this case.  It is evident that Arlington's *ipse dixit* opinions rendered in this case must be excluded from evidence in this case as a matter of law.

Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. See *Turpin v. Merrell Dow Pharmaceuticals, Inc*., 959 F.2d 1349, 1360 (CA 6), cert. denied, 506 U.S. 826, 121 L. Ed. 2d 47, 113 S. Ct. 84 (1992). *GE v. Joiner*, 522 U.S. 136, 146 (1997).

**VI.    CONCLUSION**

The above premises considered, it is respectfully submitted that Violeta's Motion for Summary Judgment should be granted as a matter of law.

*/s/ Willaim C. Parler, Jr.*
WILLIAM CARLOS PARLER, JR.
Bar No.: 389967
**THE LAW OFFICES OF**
**WILLIAM C. PARLER, JR., LLC**
311 Gailridge Road
Timonium, Maryland 21093
(410) 832-1885
w.parler@parlerlaw.com
*Attorneys for Defendant, Violeta Grounds Management Co., Inc.*

**REQUEST FOR HEARING**

Pursuant to Local Civil Rule 7(f), Defendant hereby requests a hearing its Motion for Summary Judgment.

*/s/ Willaim C. Parler, Jr.*
WILLIAM CARLOS PARLER, JR.


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May 2025, a copy of the aforegoing was served by Notice of Electronic Filing generated by CM/ECF on all counsel of record:


Michael S. Olin, Esq.
Alaina Fotiu-Wojtowicz, Esq.
Robert Visca, Esq.
BRODY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
alaina@bfwlegal.com
molin@bfwlegal.com
robert@bfwlegal.com
docketing@bfwlegal.com
*Attorneys for Plaintiff*

John Bardo, Esq.
DOJ-USAO
601 D Street NW
Washington, DC 20530
john.bardo@usdoj.gov
*Attorneys for United States of America*

Joseph Boury, Esq.
Litchfield Cavo LLP
420 Lexington Avenue, Suite 2104
New York, NY 10170
boury@litchfieldcavo.com
*Attorneys for The Davey Tree Expert Company*


*/s/ William C. Parler, Jr.*
WILLIAM C. PARLER, JR.